**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Employers Mutual Casualty Co.,

    Plaintiff,

    v.                                                        Case No. 1:06cv749

Interstate Equipment Sales &                  Judge Michael R. Barrett
Rentals, Inc., *et al.*,

    Defendants.

**OPINION & ORDER**

This matter is before the Court upon Plaintiff Employers Mutual Casualty Company's Motion for Summary Judgment (Doc. 20) and Defendant Interstate Equipment Sales & Rentals, Inc.'s Motion for Summary Judgment (Doc. 21). Both Parties have filed their respective Responses in Opposition (Docs. 22, 23) and Replies (Docs. 24, 25). This matter is now ripe for review.

**I.    BACKGROUND**

Interstate Equipment Sales & Rentals, Inc. ("Interstate") is a Kentucky corporation with its principal place of business in Richmond, Kentucky. (Doc. 15, ¶ 1; Doc. 16, ¶ 1) Interstate buys and sells construction tools and equipment, and also maintains a fleet of rental equipment.

At all relevant times, Interstate maintained Commercial Inland Marine insurance coverage with Employers Mutual Casualty ("EMC"). Interstate's insurance coverage included "false pretense coverage." (Michael Loftus Depo. at 38-40). The false pretense coverage had coverage limits of $100,000 per occurrence. (Doc. 15, ¶ 2; Doc. 16, ¶ 2).

The policy, entitled "Equipment Dealers Stock Coverage" provided as follows:

> Coverage F – False Pretense
>
> This coverage applies to property insured under Coverages A, B and E.
>
> We will pay for loss that results from:
>
> 1   someone causing you to voluntarily part with any covered property by trick, scheme or false pretense, or
>
> 2.   your acquisition of covered property from a seller who did not have legal title, or
>
> 3.   conversion of covered property that you rent or lease to others.

(Loftus Depo., Ex. 3)  The "covered property" under Coverage A includes "stock of merchandise . . . consisting principally of agricultural, construction and materials handling equipment."  (Id.)  Property under Coverage B includes property of others "while such property is in your care, custody or control."  Property under Coverage E includes equipment "rented or leased to others by you."  (Id.)

Between June, 2004 and February, 2005, Interstate purchased five separate pieces of heavy equipment known as Caterpillar Track Loaders at prices ranging from $125,000 to $165,000 per unit.  (Doc. 15, ¶ 4; Doc. 16, ¶ 3)  Interstate purchased the units from an equipment dealer in Florida known as EuroTrac, Inc., which had imported the equipment from Europe.  Interstate re-sold four of the units to customers, and retained the fifth in its rental fleet.  (Doc. 15, ¶ 5; Doc. 16, ¶ 3)  Interstate never took physical possession of the four machines it sold, but did assign unit numbers to each piece of equipment.  (Kevin Lewis Depo. at 34-36)

Between June and September, 2006, all five units were seized by the FBI and the Cincinnati Police Department.  (Doc. 15, ¶ 6; Doc. 16, ¶ 3)  Interstate refunded its

customers some or all of the purchase prices for the four units that it had sold.

Interstate notified EMC of the loss and made claims under the policy. EMC paid Interstate $100,000 under the false pretense coverage for the loss of the fifth unit that was in Interstate's rental fleet at the time of its seizure. EMC refused to pay Interstate for the four units that had been sold prior to their seizure. EMC maintains that Interstate did not have an insurable interest in the equipment at the time of the loss because it did not own it. (Loftus Depo., at 69-70, Ex. 14) Interstate maintains that the loss did not occur when the government repossessed the equipment, but instead occurred when it purchased the equipment from EuroTrac, who did not have the lawful right or ability to sell the equipment.

In its Amended Complaint, EMC seeks a declaration that EMC has no duty to defend or indemnify Interstate with respect to the four Caterpillar units that it sold after acquiring them from EuroTrac. (Doc. 10) In its Counterclaim, Interstate seeks a declaration that EMC is required to indemnify Interstate for its losses, as well as damages for breach of contract. (Doc. 15)

## II. ANALYSIS

### A. Motion for Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant

probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B. Contract Interpretation

The Parties agree that Kentucky law applies to their dispute. The Parties also agree that there are no facts in dispute, and instead, this case is one of contract interpretation.

Under Kentucky law, "[t]he interpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Ky.*, 82 S.W.3d 869, 871 (2002). Where policy terms are not ambiguous, "the ordinary meaning of the words chosen by the insurer is to be followed." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). However, if an insurance contract is subject to two interpretations, the court must construe the language in favor of the insured. *Woodson v. Manhattan Life Ins. Co.*, 743 S.W.2d 835, 839 (Ky. 1987). Kentucky courts also apply the doctrine of reasonable expectations where a policy contains ambiguous terms: "The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat the expectation." *Id.*

Here, the insurance contract provides that EMC "will pay for loss that results from . . . your acquisition of covered property from a seller who did not have legal title." Under

Coverage A, "covered property" includes "stock of merchandise . . . consisting principally of agricultural, construction and materials handling equipment." (Id.) The Court finds that these terms are not ambiguous, and therefore the ordinary meaning of the words chosen by the insurer is to be followed. The policy contemplates a "loss" occasioned by "acquisition of covered property from a seller who did not have legal title." There is no dispute that EuroTrac did not have legal title of the equipment when Interstate acquired the property. Therefore, the loss occurred when Interstate purchased the five units from EuroTrac. The subsequent sale or rental of the equipments is irrelevant to the application of the coverage.

     Even if the Court were to read ambiguity into either the terms "loss" or "acquisition," the Court concludes that the application of Kentucky's rules of contract interpretation result in a finding in favor of Interstate. First, any ambiguous language must be construed in favor of the insured. Second, it was reasonable for Interstate to expect that a loss resulting from a purchase of equipment without valid title would be covered by the policy. The Court notes that the policy is entitled "Equipment Dealers Stock Coverage," and therefore the Parties contemplated that Interstate would be acting as an equipment dealer. As such, Interstate would be purchasing equipment and reselling it to others. The false pretense coverage clearly foresees the purchase of equipment from a seller without valid title and passing this "stock of merchandise" on to customers. *Accord Scott Hoffer Chevrolet-Geo, Inc. v. Federated Mut. Ins.*, 1997 WL 366064, *8 (N.D.Ind. June 26, 1997) (unpublished) ("Clearly, SHC and Federated contemplated insuring the plaintiff's inventory in the context of the plaintiff's business. It was contemplated that plaintiff's inventory would be in a constant state of flux. The business of a car dealership involves inventory moving onto and

off of the premises.")[1]

Finally, the Court notes that there is no unequivocally conspicuous, plain and clear manifestation of EMC's intent to exclude coverage. "Loss" is not defined as loss which occurs at a specific point in time. "Acquisition of covered property" is not limited to equipment which has been acquired and the insured owns when a claim under the policy is made. Similarly, "acquisition" is not defined as taking physical possession of equipment after its purchase.

Furthermore, the Court finds that there is nothing in the above analysis which conflicts with Kentucky's statutory definition of "insurable interest." Kentucky Revised Statutes 304.14-060(2) defines an "insurable interest" as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." At the time Interstate purchased the equipment from EuroTrac, Interstate had a substantial economic interest in its safety or preservation from loss. Interstate had paid EuroTrac for the equipment and accepted payment for four of the units from its customers. Interstate's economic interest in the fifth unit stemmed from its value as a piece of rental equipment. Furthermore, the statute does not require that there be physical possession in order for there to be an insurable interest.

Accordingly, the Court finds that Interstate was entitled to false pretense coverage on the four units sold to its customers.

---

[1]The Court has not located any Kentucky cases interpreting a insurance contract for false pretense coverage. Therefore, the Court must predict how Kentucky's highest court would rule based on all available data. *Dinsmore Instrument Co. v. Bombardier, Inc.*, 199 F.3d 318, 320 (6th Cir. 1999).

### C. Breach of Contract

Interstate claims that it is entitled to compensatory damages based upon EMC's breach of the insurance contract. These damages would exceed the policy coverage limits of $100,000 per occurrence. However, Interstate has not brought a claim for bad faith against EMC, and has not provided any support for the proposition that an insured is entitled to anything more than specific performance of the contract when the insurer is found to be in breach of the contract.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff Employers Mutual Casualty Company's Motion for Summary Judgment (Doc. 20) is **DENIED**;

2. Defendant Interstate Equipment Sales & Rentals, Inc.'s Motion for Summary Judgment (Doc. 21) is **GRANTED**;

3. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

          */s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court